# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHELLE R. Q., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
|  | : | |
| FRANK J. BISIGNANO,[1] | : | No. 22-4770 |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**PAMELA A. CARLOS**                                                                            October 22, 2025
**U.S. MAGISTRATE JUDGE**

      Plaintiff Michelle R. Q. appeals the Commissioner of Social Security's final decision to deny her claim for benefits. In particular, she contends that the unfavorable decision improperly rejected the medical opinions of her treating physician and a consulting examiner, and in doing so, omitted some of her credibly established limitations in the hypothetical question posed to the vocational expert. The Commissioner disagrees, arguing that the decision to deny benefits comported with the governing regulations and is supported by substantial evidence. For the reasons that follow, I will grant Plaintiff's request for review and remand this matter to the Commissioner for an immediate award of benefits consistent with this opinion.

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.   **BACKGROUND**

   **A. Factual and Procedural History.**

Plaintiff was born in March 1987. R. 530. Although she has a high school level of education, Plaintiff has never worked. R. 553–54. She cites her medical conditions as the reason for this, and therefore, over the years, Plaintiff has repeatedly sought Social Security disability benefits. *See, e.g.*, R. 225–38 (ALJ decision from 2004 application); R. 242 (ALJ decision from 2007 application).

Relevant here, on March 24, 2016, Plaintiff applied for supplemental security income ("SSI"). R. 179–80. She alleged that she was disabled based on her Crohn's disease, mental health issues, migraines, and lower back and arm pain. R. 180. Her claim was initially denied on June 9, 2016. *See* R. 271–75. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), *see* R. 280, and a hearing was held on February 21, 2018, *see* R. 114–163. After this hearing, on May 16, 2018, the ALJ issued a written decision again denying Plaintiff's claim. R. 199–211.

Disagreeing with the ALJ's decision, Plaintiff sought review with the Appeals Council. Upon review, the Appeals Council remanded the case because the ALJ used certain terms in her decision that were unclear. *See* R. 218–20 (finding the terms "little independent decision making," "minimal social contact," and "complicated tasks" to not be "a clear function-by-function assessment" of plaintiff's ability to do work, as required). The Appeals Council also reassigned the matter to a different ALJ in response to Plaintiff's Appointments Clause challenge. *Id.*

On remand, a second hearing was held on March 13, 2020. *See* R. 70–113. Shortly thereafter, on March 31, 2020, the ALJ issued another written decision denying Plaintiff's claim.

*See* R. 246–59. But again, the matter was remanded back to the ALJ on March 19, 2021. *See* R. 267–68. This time, the remand was due to the fact that at the hearing, the ALJ promised to hold the record open for another thirty days to allow counsel to submit additional records, yet the ALJ issued her opinion before that time expired. *See id.* Therefore, the Appeals Council remanded the matter and instructed the ALJ to consider the new evidence before issuing an opinion. *Id.*

A third telephone hearing was held on July 20, 2021, *see* R. 40–69. Less than a month later, on August 10, 2021, the ALJ issued the third written decision denying Plaintiff's claim. R. 16–31. The Appeals Council denied Plaintiff's request for review, meaning this third written opinion became the final decision of the Commissioner. *See* R. 1–3. Plaintiff now timely appeals.[2]

###### B. ALJ's Decision.

In her 2021 decision, the ALJ evaluated Plaintiff's claim using the five-step sequential analysis set forth in the Social Security regulations.[3] Beginning at step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since the application date on March 24, 2016. *See* R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: Crohn's disease, plantar fascial fibromatosis on her left foot, posterior tibial tendonitis on her left leg, migraine headaches, major depressive disorder, generalized anxiety disorder, and a panic

---

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 3, 6.

[3] The sequential analysis requires the ALJ to evaluate (1) whether the claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering her residual functional capacity; and (5) whether the claimant can adjust to other work considering his residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)–(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

disorder with agoraphobia. *See* R. 18–19. The ganglion cyst on her left hand and her lower back pain, while medically determinable, were deemed non-severe because they have not caused more than minimal limitations on her ability to work. *Id.* Likewise, the ALJ deemed Plaintiff's sinus disease as non-severe because it was not a medically determinable impairment. *See* R. 19.

Moving on to step three, the ALJ concluded that none of Plaintiff's severe impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. *See* R. 19–22. Specifically, the ALJ compared Plaintiff's impairments to the impairments included in Listings 1.00 (musculoskeletal disorders), 5.00 (digestive disorders), and 11.00 (neurological disorders), as well as Listings 12.04 (depressive-related disorders) and 12.06 (anxiety-related disorders). *Id.*

Before reaching step four, the ALJ considered Plaintiff's residual functional capacity ("RFC").[4] After reviewing the objective medical evidence and the subjective opinions in the record, the ALJ determined that Plaintiff has the RFC to perform "light work,"[5] subject to the following restrictions:

> occasional postural activities; no pushing or pulling with the lower extremities; being limited to simple, repetitive tasks with only

---

[4] Residual functional capacity is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

[5] The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* More specifically, the Social Security Administration has instructed that "light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Jesurum v. Sec'y of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir. 1995)); *see also* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

>occasional changes in work setting and occasional contact with the
>public and coworkers.

*See* R. 22–30.

At step four, the ALJ found that Plaintiff had no past relevant work. *See* R. 30. The ALJ then proceeded to step five and identified multiple jobs in the national economy that Plaintiff could perform, including garment sorter, marker, and odd piece checker. *See* R. 40–41. As such, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.[6] *See* R. 41–42.

## II.   STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). When reviewing for substantial evidence, courts cannot "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, any legal conclusions are

---

[6] Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

reviewed under a plenary standard. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019).

### III.     DISCUSSION

Although the Plaintiff appeals the ALJ's unfavorable decision on three separate grounds, only her second claim needs to be addressed here.[7] In that claim, Plaintiff contends that when evaluating her RFC, the ALJ improperly dismissed the medical judgment of the consulting examiner in favor of her own lay opinion. *See* Doc. No. 10, at 13–23. The Commissioner, on the other hand, maintains that the ALJ properly gave more weight to the opinion of the reviewing state agency physician over the consulting examiner, and therefore the RFC is supported by substantial evidence. *See* Doc. No. 11, at 9–12. After careful review, I agree with Plaintiff that the ALJ's analysis of the consulting examiner's opinion, at the RFC stage, was woefully inadequate.

On June 7, 2016, Plaintiff presented to the consulting examiner, Dr. Joseph Primavera, for a mental status evaluation. *See* R. 802–05. At the evaluation, Dr. Primavera recorded Plaintiff's relevant background information, including her psychiatric history and her reported level of current functioning. *See* R. 802–03. Dr. Primavera then conducted a mental status examination. *See* R. 803–04. He began by noting that Plaintiff was "cooperative" and that her "social skills and overall presentation" appeared "adequate." *See* R. 803. He then observed, among other things, that while Plaintiff's thought processes were coherent and goal directed, her affect was depressed, and her mood was dysthymic. *See* R. 803–04. Based on the totality of the

---

[7] Plaintiff's first claim attacks the ALJ's decision to afford her treating physician's opinion only partial, not great or controlling, weight. *See* Doc. No. 10, at 5–13. Meanwhile, in her final claim, Plaintiff contends that the ALJ's step five determination was erroneous because it relied on the vocational expert's response to an allegedly deficient hypothetical question asking whether an individual with Plaintiff's RFC could perform any jobs in the national economy. *See id.* at 24–25. Plaintiff asserts that the hypothetical question—which accurately reflected the ALJ's RFC determination—was deficient solely because it did not include the additional limitations assessed by the treating physician and consulting examiner that are the subject of her other claims. *See id.*

evaluation, Dr. Primavera diagnosed Plaintiff with an unspecified depressive disorder, rule out major depressive disorder, generalized anxiety disorder, and panic disorder with social phobia/agoraphobia. *See* R. 805.

Following the examination, Dr. Primavera completed a medical source statement opining on Plaintiff's mental ability to perform work-related functions. *See* R. 806–08. Relevant here are two findings: that Plaintiff had marked limitations interacting appropriately with the public, and that Plaintiff had marked limitations in responding appropriately to usual work situations and to changes in a routine work setting. *See* R. 807. He cited Plaintiff's "panic, social phobia, anxiety, [and] depression" as support for his assessment. *Id.*

The ALJ considered Dr. Primavera's opinion as part of her RFC analysis, but she ultimately concluded that it deserved only little weight. *See* R. 28–29. She reasoned that:

> [T]he limitations set forth therein are inconsistent with [Dr. Primavera's] own examination as well as with the claimant's reported daily activities. Based solely on the claimant's subjective allegations, Dr. Primavera suggested that the claimant would have marked limitations interacting appropriately with the public and responding appropriately to usual work situations and to changes in a routine work setting. However, given that Dr. Primavera described the claimant's social skills as adequate, and given the range of daily activities she reports engaging in, the undersigned finds no basis for such extreme limitations.
>
> With regard to claimant's ability to respond appropriately to usual work situations and changes in a routine work setting, the undersigned also notes that, as the claimant has never worked, Dr. Primavera has no baseline to evaluate her abilities. However, the claimant is the primary caregiver for her two young children, she maintains her household, and she enjoys watching television and reading books involving more sophisticated storylines (Hearing Testimony). As noted above, some of the mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and, as such, the undersigned cannot reasonably find that the extent of limitation on the claimant's mental functioning is so significant as to preclude unskilled work. For the above reasons,

> Dr. Primavera's social and adaptation limitations are found
> inconsistent with the nature and findings from the claimant's
> treatment records, and therefore his opinion is given little weight.

*Id.*

Plaintiff now challenges the adequacy of this explanation. *See* Doc. No. 10, at 13–23. She alleges that the ALJ substituted her own lay interpretation of the evidence for Dr. Primavera's medical expertise.[8] *See* Doc. No. 10, at 17–19. Specifically, the Plaintiff takes issue with the ALJ's decision to discredit Dr. Primavera's findings on the grounds that (1) he relied "solely" on Plaintiff's "subjective allegations," (2) he was not qualified to evaluate Plaintiff's ability to respond to usual work situations, and (3) the nature of Plaintiff's daily activities suggested an ability to maintain employment. *See id.* at 18–21. These alleged errors were harmful, according to Plaintiff, because the ALJ ultimately assigned her a less restrictive RFC than recommended by Dr. Primavera. *See id.* at 14.

The RFC determination is ultimately an administrative, not medical, decision that is reserved for the ALJ. *See* 20 C.F.R. § 416.927(d)(2). But to reach this decision, the ALJ must first evaluate and weigh the medical opinions in the record. *See* SSR 96-5p, 1996 WL 374183, at *2–3 (July 2, 1996). As part of this analysis, the governing social security regulations distinguish the medical opinions based on the source's status as either a treating physician, consulting examiner, or a state-agency reviewing consultant. *See* 20 C.F.R.§ 416.927(c).

A treating physician's opinion, under these regulations, will be entitled to "controlling weight," if it is (1) "well-supported by medically available clinical and laboratory diagnostic

---

[8] Plaintiff also alleges that the ALJ misunderstood the extent of Dr. Primavera's recommended limitations, characterizing them as "extreme" rather than "marked" or "moderate." *See* Doc. No. 10, at 18. However, I find that the ALJ was not using the term "extreme" as it is defined by the regulations, but rather in the colloquial sense that Dr. Primavera's findings overstated Plaintiff's abilities.

techniques," and (2) "not inconsistent with the other substantial evidence in [the] record."⁹ *Id.* § 416.927(c)(2). However, where, such as here, there is no treating physician's opinion, then the ALJ must weigh each opinion in the record based on various factors. *See id.* §§ 416.927(c)(2)–(6). These factors include the medical source's relationship with the claimant,¹⁰ the supportability of the opinion,¹¹ the consistency of the opinion,¹² and the medical source's specialization.¹³ *Id.*

The evaluation of the medical opinions, and the RFC determination more generally, must be supported by "a clear and satisfactory" explanation. *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). Such an explanation must contain enough detail to permit meaningful judicial review. *See Burnett*, 220 F.3d at 119–20. Otherwise, the reviewing court is unable to discern whether the ALJ's decision is supported by substantial evidence. *See Cotter*, 642 F.2d at 705. This is especially true when there is "conflicting probative evidence in the record." *See Fargnoli*, 247 F.3d at 42. While the ALJ may weigh the evidence and choose what evidence to credit, she cannot reject contradictory evidence for "no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.

---

⁹ The social security regulations regarding the evaluation of medical opinion evidence have recently changed. However, because Plaintiff's claim for social security benefits was filed before March 27, 2017, the old regulations still govern her claim here. *See* 20 C.F.R. § 416.920c.

¹⁰ Relevant considerations related to the source's relationship include whether the source conducted an examination of the claimant, whether there is a treatment relationship, and if so, the length, frequency, nature, and extent of that relationship. *See* 20 C.F.R. § 416.927(c)(1)–(2). The regulations advise that more weight is often given to the opinion of examining source over that of a non-examining source. *See id.* § 416.927(c)(1).

¹¹ Supportability, in this context, refers to the objective medical evidence and explanation provided by the medical source to support their opinion. *See* 20 C.F.R. § 416.927(c)(3).

¹² Consistency, as referenced in the regulations, refers to the extent that the opinion is consistent with the rest of the administrative record. *See* 20 C.F.R. § 416.927(c)(4).

¹³ Where a medical source opines about medical issues related to their specialization, more weight is given to that opinion. *See* 20 C.F.R. § 416.927(c)(5).

9

1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Therefore, an adequate explanation is needed to ensure that the ALJ's reason for discounting significant contradictory evidence was proper. *Cotter*, 642 F.2d at 706–07.

Here, the ALJ's explanation for rejecting Dr. Primavera's opinion was problematic. The ALJ begins by dismissing Dr. Primavera's findings because he relied "solely" on Plaintiff's "subjective allegations," which the ALJ alleged were contradicted by his own conclusions and Plaintiff's activities of daily living. *See* R. 28. But this reasoning is misplaced: there is no indication that Plaintiff's self-reports—and not Dr. Primavera's observations and clinical expertise—formed the *sole* basis for the findings. And even so, that would not necessarily constitute error. It is well-recognized that in the mental health field, a patient's subjective description of her symptoms is an important tool for diagnosis and treatment. *See, e.g.*, *Stacey v. Commissioner*, 799 F. App'x 7, 9 (2d Cir. 2020) ("[P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist . . ." (alteration and omission in original) (quoting *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015))).

As for Dr. Primavera's own observation (that Plaintiff's "social skills" were "adequate") and that she engaged in activities of daily living, neither undermined the Plaintiff's subjective allegations nor the doctor's opinion. First, the reference to Plaintiff's social skills as adequate was mentioned in the limited context of the mental status examination, not to Plaintiff's skills generally or in the work context. *See* R. 803. Second, the ALJ referenced, in a conclusory fashion, that Plaintiff's daily activities contradicted Dr. Primavera's opinion. This is not sufficient to permit meaningful judicial review. And to the extent the ALJ was referencing the same daily activities as she did in the subsequent paragraph, that analysis is significantly flawed.

Beyond this initial rejection of Dr. Primavera's opinion, the ALJ focused on Dr. Primavera's conclusion that Plaintiff was markedly limited in her ability to respond appropriately to typical work situations and changes in the work setting. *See* R. 28–29. The ALJ determined that Dr. Primavera was unqualified to make this determination because Plaintiff has no prior work history. *See* R. 28. This is puzzling. By the same logic, the ALJ too is not qualified to make such a determination. But regardless, Dr. Primavera is a licensed psychologist who is hired by the Social Security Administration to opine on this exact subject. The fact that Plaintiff did not have a prior work history did not preclude Dr. Primavera from offering his expert opinion, and the ALJ's rejection of his opinion on this ground was error.

This error was further compounded by the ALJ's additional reasons for rejecting Dr. Primavera's conclusion. The ALJ found that Plaintiff's ability to care for her two children, maintain her household, and enjoy television shows and books with "more sophisticated storylines" demonstrated a greater ability to respond to work situations and changes than assessed by Dr. Primavera. *See* R. 29. Not only is this rationale undermined by the record, but it is borderline offensive. To start, Plaintiff's therapy notes are replete with references to her inability to live independently and her struggles with raising her children and fulfilling her household responsibilities. *See, e.g.*, R. 767 (mentioning Plaintiff's "long periods of non-communication and inability to live independently for more than a brief period"); R. 1038 (listing her household responsibilities, along with her medical issues, as causing her to be "anxious and overwhelmed"); R. 1147 (reporting to her therapist that she continues to be "very stressed out" due to her childcare responsibilities).

As for the television shows and books that she enjoys, the ALJ is referencing hearing testimony that Plaintiff had started reading, but did not finish, the *Harry Potter* books with her

11

children, and that Plaintiff enjoyed watching *Law & Order: Special Victims Unit*.[14] *See* R. 96. The ALJ has made an arbitrary assessment of what constitutes sophisticated television or books that cannot be verified on judicial review. Moreover, there is nothing about watching episodes of *Law & Order* or starting to read the *Harry Potter* series that bears any relevance to the analysis of whether the Plaintiff is able to adapt to changes in the workplace.[15] Such a statement by the ALJ is—at best—unhelpful, and it is a wrong reason for discounting contradictory evidence.

Finally, the ALJ suggests that Dr. Primavera's social and adaptation limitations are inconsistent with Plaintiff's treatment records. *See* R. 29. The ALJ fails to cite to *any* records that the opinion is allegedly inconsistent with, nor does she provide any concrete examples. *Id.* This lack of detail is not remedied when reading the rest of the ALJ's decision. In fact, much of the ALJ's summary of the mental health records is not an accurate depiction of the evidence. *See* R. 27–28. For example, the ALJ characterized the period after Plaintiff began treatment in 2014–2015 as fairly unremarkable, noting that Plaintiff was cooperative, and the only issue was some forgetfulness.[16] *See* R. 27 (citing to R. 768–99). Yet absent from this narrative are the ongoing

---

[14] At a prior hearing, Plaintiff testified that she recently read a book by James Patterson, but that it took her a long time and it was challenging to understand. *See* R. 147–48. Even if the novel were easy for her to understand, it still would not support the ALJ's rejection of Dr. Primavera's opinion.

[15] Plaintiff's counsel included an apt quote from a Northern District of Alabama decision:

> The court takes judicial notice of the fact that merely watching television for two hours at a time does not indicate an ability to perform in a work setting. Anyone visiting a nursing home filled with dementia patients will see many, if not most, with their eyes fixed on a television screen. . . . Therefore, the ability to "watch television" provides no basis for finding the plaintiff can work.

*See* Doc. No. 10, at 21 (quoting *Holman v. Barnhart*, 313 F. Supp. 2d 1265, 1270 (N.D. Ala. 2004)).

[16] The full passage from the ALJ's decision is as follows:

> Throughout the remainder of 2014 and in 2015, she was routinely described as cooperative, communicative, and with a good attitude and good interpersonal reaction. During these visits, she reported that her medications were working and denied any side effects from them (Exhibit E6F/17-48). On occasion, she reported some forgetfulness, but given that her memory was

reports of her symptoms of depression and anxiety, including her anger, lack of motivation, excessive worry, inability to concentrate or perform daily activities, guarded appearance, defensive attitude, loss of appetite, diminished interest in activities, and irritability. *See* R. 768–99.

Likewise, for the period of 2016–2018, the ALJ inaccurately paints a picture that Plaintiff's mental impairments had minimal impact on her daily life. *See* R. 27–28. The ALJ mentioned that Plaintiff had "normal" mental status examinations and a reported improvement in symptoms. *Id.* This included an "increased control over her temper, and a significant reduction in incidents of poor anger management." *Id.* (referencing a treatment note from June 2016). The ALJ also mentioned that Plaintiff was described as "receptive and open minded, she had a neutral mood and thought content, and her cognitive functioning was intact." *Id.* But when looking at the treatment notes the ALJ cited in support, it is evident that the ALJ focused on the select notes in the record that supported her position. *See id.* Not included in her written summary (but present in the cited records) were the frequent reports of anxiety, depression, and panic attacks. *See* R. 1139, 1143, 1144, 1147, 1148, 1153. In addition, these notes revealed that Plaintiff had "poor progress" in controlling her emotions with "no significant improvement" as of August 2018.[17] *See* R. 1147, 1153.

None of this is included in the ALJ's narrative. Instead, the ALJ simply reported that "on occasion," Plaintiff experienced an increase of her symptoms of depression or anxiety, and also

---

> routinely assessed as good, this issue is found accounted for by the limitation to simple, repetitive tasks included herein.

*See* R. 27.

[17] Other records revealed that Plaintiff rocked back and forth as a soothing mechanism multiple times a day, *see* R. 1024, 1034, argued with other members of the public, *see* R. 1040, and was resistant or defensive at sessions (rather than cooperative), *see* R. 1045–46, 1051–61, 1063, 1065–68.

downplayed their significance by attributing them to "situational stressors." *See* R. 28. As such, the ALJ felt they would be accommodated by limitations to "simple, repetitive tasks" and "occasional contact with the public and coworkers." *Id.* But it is unclear what "on occasion" means or what evidence supports the distinction that her symptoms were caused by "situational stressors" as it is not obvious on review of the treatment notes. Rather, documentation of Plaintiff's depression and anxiety are pervasive during this period, and the stressors in Plaintiff's life appear constant. *See, e.g.*, R. 762–67, 1009–61, 1063–65, 1067–69, 1139, 1143–44, 1147–48, 1153.

Turning to the more recent records from 2019 through 2021, the ALJ again selected statements that supported her conclusion while downplaying, or not acknowledging, the significant records to the contrary. For instance, the ALJ noted that Plaintiff's mental status evaluations were "relatively unremarkable" in 2020 and Plaintiff reported an improved mood. *See* R. 28. But on review, it appears that her mood and affect were consistently noted as depressed and anxious. *See, e.g.*, R. 1257, 1287–1313, 1345–47, 1351–1471. There also were repeated references to her sadness, frustration, irritability, and worry. *Id.*

Given these deficiencies with the ALJ's summary of the medical evidence, more than the ALJ's conclusory statement—that Dr. Primavera's social and adaptation limitations were inconsistent with the record—is needed in order to permit meaningful judicial review and to confirm that substantial evidence supports the ALJ's decision. And for the reasons explained above, none of the other reasons provided by the ALJ are acceptable grounds for discrediting medical opinion evidence. As such, the final decision of the Commissioner of Social Security will be reversed.

The analysis, however, does not end there. I must now address what is the proper remedy. Plaintiff submits an award of benefits, rather than a remand for an additional hearing, is warranted. *See* Doc. No. 10, at 25–26. For support, she highlights the significant length of the underlying proceedings (over seven years) with three administrative hearings and two agency-level appeals. *See id.* at 26. During those proceedings, the record was fully developed and, according to Plaintiff, there is substantial evidence demonstrating that she is entitled to benefits. *Id.* Therefore, Plaintiff urges the Court to award benefits. *Id.* In response, the Commissioner asks that the Court ignore the substantial delay and instead remand the matter back to the agency for additional proceedings. *See* Doc. No. 11, at 12–14. The Commissioner argues that this is more appropriate because to award benefits, the Court would have to make factual determinations that are "outside the scope of judicial review." *Id.* at 14.

Under the fourth sentence of 42 U.S.C. § 405(g), a federal district court is authorized to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Given this authority, it is well-established that the reviewing court may, at its discretion, remand the matter for further proceedings or order an award of benefits directly. *See Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). The exercise of this discretion is guided by certain basic principles. As explained best by our Court of Appeals, the decision to award benefits "should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id.* at 221–22. Otherwise, a remand for a rehearing "would result only in further delay in the receipt of benefits." *Id.* As such, reviewing courts weigh two factors when deciding whether to award benefits in lieu of remanding for further agency consideration: (1) "whether there has been an

15

excessive delay in the litigation of the claim which is not attributable to the claimant," and (2) "whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).

In order to assess whether the delay is excessive, the court must "consider both the amount of time that has passed during the pendency of the matter and the number of prior appeals and remands." *James B. v. O'Malley*, No. 23-3644, 2024 WL 3207311, at *2 (E.D. Pa. June 21, 2024) (citing *Diaz*, 388 F. Supp. 3d at 391). Many courts have found delays to be excessive when they last five or more years and involve several appeals and/or remands. *Id.* (citing to *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (eight years and two prior remands); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (ten years and two appeals); *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1162 (3d Cir. 1988) (eight years and two remands); *Podedworny*, 745 F.2d at 223 (five years and two appeals); *Nance v. Barnhart*, 194 F. Supp. 2d 302, 322 (D. Del. 2002) (seven years to process first appeal); *Schonewolf v. Callahan*, 972 F. Supp. 277, 291 (D.N.J. 1997) (six years and two remands). But delay alone is not sufficient to warrant a direct award of benefits, and no bright-line rule exists. In fact, several courts have held that remand is appropriate even when the case has been pending for several years. *See, e.g.*, *Henderson v. Colvin*, No. 12-5316, 2014 WL 5431111, at *13 (E.D. Pa. Oct. 27, 2014) (holding remand is appropriate even though claimant had applied for benefits nine years prior, attending six administrative hearings, and appeared in federal court four times); *Woody v. Astrue*, No. 08-33, 2009 WL 799657, at *29 (W.D. Va. Mar. 24, 2009) (agreeing that the delay of more than eight years was excessive, but holding remand is appropriate because claimant's entitlement to benefits was not clear from the record).

16

As for the second factor, in which the court examines the underlying merits of the plaintiff's claim, there are two components. First, the court considers whether the administrative record is "extensive and well developed." *Diaz*, 388 F. Supp. 3d at 391 (quoting *Eberhart v. Massanari*, 172 F. Supp. 2d 589, 599 (M.D. Pa. 2001)). This element is satisfied where, for example, the medical opinion evidence in a case has been fully developed and further administrative proceedings are unnecessary. *See id.* (citing to *Brownawell*, 554 F.3d at 358 (3d Cir. 2008)). Next, the court assesses whether substantial evidence in the record as a whole indicates plaintiff is entitled to benefits. Courts have found this element to be met when:

> [T]he "extensive medical record, wrongly rejected by the ALJ, is substantial evidence that [a claimant is disabled]," . . . or when treatment records, coupled with a treating source's opinions over several years, indicates that the plaintiff is unable to maintain a normal, regular work schedule . . .

*See id*. at 392 (internal citations omitted). In this regard, the court's evaluation of the record considers which party bears the burden of proof and production given the procedural posture of the case. *See id.* For example, it is well-settled that the claimant bears the burden of proof from steps one through four of the analysis, and the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy given the claimant's age, education, and RFC. *See id.*

The factors, here, weigh in favor of an award of benefits. There certainly has been excessive delay: Plaintiff's social security application languished for over six years in the agency, where the ALJ had three chances to get the analysis right. Yet each time the ALJ erred. This was not the fault of the Plaintiff, and I am reluctant to give the ALJ a fourth bite at the apple.

Moving on to the second factor, it is evident that the record is extensive and well-developed. The administrative record is exhaustive: it totals over one thousand eight hundred pages, one thousand two hundred of which are medical records and medical opinion evidence. Taken together, these records demonstrate that Plaintiff is entitled to an award of benefits. Notably, as discussed above, Dr. Primavera assessed Plaintiff with marked limitations in her social and adaptation abilities. *See* R. The ALJ improperly rejected these findings, and instead only limited Plaintiff to occasional contact with the public and coworkers and only occasional changes in the work setting. *See* R. 22. Had the ALJ further limited the RFC consistent with Dr. Primavera's opinion, no jobs would exist for the Plaintiff in the national economy, *see* R. 67–68 (vocational expert testimony), and she would be entitled to benefits. Because there is substantial evidence to support adopting Dr. Primavera's opinion, I conclude that an award of benefits is appropriate.

## IV.    CONCLUSION

For the reasons explained above, Plaintiff Michelle R.Q.'s request for review is **GRANTED**. The ALJ's explanation for rejecting the consulting examiner's opinion was erroneous, and substantial evidence supports adopting the opinion. Therefore, the final decision of the Commissioner of Social Security is **REVERSED,** and this matter is **REMANDED** to the Commissioner for an immediate award of benefits consistent with this opinion. An appropriate order follows.

BY THE COURT:

_s/Pamela A. Carlos_
PAMELA A. CARLOS
U.S. Magistrate Judge